UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Hong Zhuang

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

EMD Performance Materials Corp.

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**R E C E I V E D**

**FEB 0 8 2018**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

**COMPLAINT**

Jury Trial: [ ] Yes [x] No

(check one)

**I. Parties in this complaint:**

A. List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

**Plaintiff**   Name            Hong Zhuang
              Street Address   64 The Terrace, Apt #2
              County, City     Rutherford
              State & Zip Code NJ 07070
              Telephone Number 908-635-3058

B.  List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1  
Name EMD Performance Materials Corp. (Job Location: Somerville NJ 08876)  
Street Address 1200 Intrepid Ave  
County, City Philadelphia  
State & Zip Code PA, 19112

Defendant No. 2  
Name _____  
Street Address _____  
County, City _____  
State & Zip Code _____

Defendant No. 3  
Name _____  
Street Address _____  
County, City _____  
State & Zip Code _____

Defendant No. 4  
Name _____  
Street Address _____  
County, City _____  
State & Zip Code _____

## II. Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A.  What is the basis for federal court jurisdiction? *(check all that apply)*  
[X] Federal Questions  
[ ] Diversity of Citizenship  
[ ] U.S. Government Plaintiff  
[ ] U.S. Government Defendant

B.  If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? Association Provision of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112:12117  
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e:2000e-17  
Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621:634  
Family Medical Leave Act, 29 U.S.C. § 2601, et seq., New Jersey Libel Slander and Defamation Law

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

### III. Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? _____

EMD Performance Materials Corp., 70 Meister Ave., Somerville, NJ 08876

B. What date and approximate time did the events giving rise to your claim(s) occur? _____

I was harassed 04-01-2016 to 04-03-2017

I was terminated 04-03-2017

**What happened to you?**

C. Facts: Please see additional sheets attached.

**Who did what?**

**Was anyone else involved?**

**Who else saw what happened?**

- 3 -

## IV. Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____

_____

_____

_____

_____

## V. Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

Repair my reputation: Clarify the true facts and prevent rumor spreading.

Reinstatement of my employment: Equal treatment as other team members.

Lost wage and benefits $40,000

Extra rent and moving expenses $24,000

Emotional stresses to me and my family $20,000

Severance for 17 years employment $70,000

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this __8__ day of __February_____, 20_18__.

Signature of Plaintiff _____

Mailing Address __64 The Terrace, Apt #2__

__Rutherford__

__NJ 07070__

Telephone Number __908-635-3058__

Fax Number *(if you have one)* _____

E-mail Address __hzhuang98@yahoo.com__

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: *Hung Huang*

- 5 -

RECEIVED
FEB 08 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

Hong Zhuang III Statement of Claim: Facts

## Summary

My former employer EMD Performance Materials Corp. discriminated, harassed, and terminated me, an US citizen, based on 1) I have a relationship or association with an individual who is disabled (I notified that my husband was disabled due to critical illness in 2016); 2) based on my age (I was 57 years old when the discrimination started); 3) Based on my race (I was the only Asian in the team), 4) Based on my future prospect of taking FMLA. Due to those discriminations, I was harassed 04-01-2016 to 04-03-2017 and terminated 04-03-2017citing failing performance requirements when I fully accomplished all performance objectives. Furthermore, in order to justify the unlawful termination, 5) EMD intentionally mad a false defamation rumor against me and damaged my reputation and my career. Evidences and details of each are listed following.

## Background

I worked in the same job location (Somerville NJ) for 17 years with always excellent performance, and was promoted from chemist to senior chemist to product safety coordinator. The company used to be "AZ Electronic Materials Corp." which was purchased by "EMD Performance Materials Corp." in 2014. My job function in AZ was merged with same job function of EMD to form combined "Hazard Communication" team. Previous AZ employees (John DiCarlo, Josh Gurman (retired from AZ, part time consultant), and myself) were working from NJ office, and previous EMD employees (the manager and other two employees) were working from Philadelphia office. In 2016, a new employee (Matthew Morrison) was hired into Philadelphia office and another new employee hired to work from St. Louise, MO office.

Previous AZ employees had been working on traditional AZ products, and previous EMD employees had been working on traditional EMD products. There was no product transfer arranged between the two product lines nor integration of the two product lines.

I was the only Asian in the team and relatively old. And, in April 2016, I informed my manager Luciana Felix and her manager Director Paul Newcomb that my husband was critically ill with advanced stage cancer. I informed that I would need time to care for my husband and asked for the consideration of arranging team activities in New Jersey facility when possible, so that I could be with my husband in the evenings.

After that notice, all meetings (many required overnight stays) were all held in Philadelphia office, and I experienced hostile discriminatory treatments from my management in several ways as detailed in the examples below. Such discrimination continued for a year and I was terminated from my job performed well for 17 years on April 3, 2017.

## Details of the discriminations

1. **I was discriminated and terminated due to association with a disabled person, with assumption that his medical expense would be costly to the company. After I enrolled my husband with cancer condition into my company sponsored health insurance starting January 1, 2017, my manager altered my originally good 2016 performance in February 2017 with non-existent performance accusations, and used it to terminate me on April 3, 2017**

1

In the end of December 2016, we conducted our year-end performance reviews. My manager and I checked through all 6 performance objectives that were set-up for me for 2016. I performed very well in ALL performance goals. The manager's year-end general comments on page 5 stated "At this point, Hong is meeting all of her objectives" (1.1 to 1.6 of Exhibition #1).

Surprisingly, in late February 2017 my manager suddenly appended a separate section of negative performance comments to my already done 2016 review with a employment warning. Those comments cited that I refused to coach a new employee and I refused to work on all products and all projects.

1) The new employee's training was not even assigned to me but I helped with;

2) We were a team of 6 members working on two product lines. There was never any arrangement for integrating the two sides of work nor any product requirements/knowledge transfer process. No one in the team was required to work on both product lines. The manager could not substantiate any when I inquired;

3) Demanding me to work on all products and all projects for a team of 6 members or no employment warning was purely a discrimination.

All of sudden, the A rating of "meeting all objectives" (end of 2016) changed to "performance must improve to remain a member of the team" (late February 2017), and "you are failing to meet performance requirements" (Performance Improvement Plan, April 3, 2017), and made it to my termination (April 3, 2017) for the same 2016 performance that nothing could have been done since the first assessment.

The only change since end of 2016 was my husband became disabled, could no longer work, and enrolled in my company sponsored medical insurance plan coverage starting January 1, 2017. As with all cancers, his treatment cost was not trivial. I was terminated due to EMD believes that my husband's medical bill would be costly for the company.

In late February 2017, I found out that my manager suddenly appended a section of fabricated negative performance comments and an employment warning to my already done 2016 Performance Management Form and forwarded online for "employee acknowledgement" without informing me of the addition. I promptly contacted manger Luciana Felix for when, why, what caused those claims. She indicated that she entered that section the week before, and her manager Paul Newcomb instructed her to push it through the system without informing me. She would not give the reasons/evidences but promised would discuss when I got in Philadelphia office for User Acceptance Test (UAT) in the week of March 13 to March 17.

On Wednesday March 22 I finished the UAT tests and re-tests. At 2pm, the manager finally had a meeting with me but took me to HR office to have the discussion together with HR business partner Kristi Dye. In HR office, the only event/evidence the manager presented was an E-mail communication between the manager and me discussing traditional EMD product LC Label releasing. 1) This was a communication in 2017 not 2016. 2) LC were traditionally EMD products that never had a product requirements/knowledge transfer process to me. I did nothing

2

wrong by ask someone qualified to check. HR business partner Kristi Dye informed me that she and Luciana Felix would come to New Jersey office in the future to present me with more evidences.

With no evidence presented, on March 24, the manager urged me to acknowledge the review even though the official deadline was March 31. At the urge of the manager, on March 27, I acknowledged the review occurred but indicated that I disagree with the portion of added negative performance comments with supporting explanations.

Moments after I send it online, HR Kristi Dye send me a message that she and the manager would come to New Jersey office for a formal performance improvement plan with me, even though the previous conversation was to provide evidences identifying any performance issues.

On April 3, 2017, my manager (Luciana Felix), manager's manager (director Paul Newcomb), and the HR Business Partner (Kristi Dye) came to New Jersey office to have a meeting with me. I thought it was issue identifying first and brought evidences of my performances. Little did I know that I was shown a prepared Performance Improvement Plan (PIP), terminated, and rushed out.

The PIP (Exhibition #2) did not provide evidences for the manager's added comments but raised different and strange issues, (e.g. "meeting manners", "discussing a previous HR investigation that has been closed for many years"). I was not aware of ANY HR investigation ever happened and the manager and HR Business Partner would not clarify after repeated inquiries.

The PIP stated "you are failing to meet performance requirements" when I performed well in all 6 areas of assigned performance objectives/requirements. PIP also stated "failure to demonstrate immediate, significant, and sustained improvement may cut the PIP period short and result in corrective action – up to and including termination".

In the PIP meeting, I responded the following:
- The manager started PIP presenting with citing that I interrupted speakers in GPLS meeting in 2016. It was, in fact, someone else interrupted, and people of the other team reported the interruption to director Paul Newcomb at that time. Paul Newcomb promptly discussed the problem with that person. I asked Mr. Newcomb to verify the true fact at the PIP meeting but he kept silence.

- In response to the citation of I assuming being added work load was because someone else did not perform, I showed Matt Morrison's own statement that he was trained by John DiCarlo and was to take over Mr. DiCarlo's role at his retirement in an email message in October 2016.

- The PIP continued to cite that I discuss non-work topics. "For example, discussing a previous HR investigation that has been closed for many years". I was not aware of ANY HR investigation ever and the manager and HR Partner would not clarify after repeated inquiries.

- In response to the citation that I refused to share information with fellow employees, I showed the list of topics/knowledge that I transferred to Matt Morrison in four days (January 10

3

to 13). I showed many communications that I helped other team members including Matt Morrison.

- In the PIP meeting, I was in the stage of disbelief. I tried to show evidence to convenience management and HR that the brought up issues were misunderstandings and did not exist. However, it was suddenly announced that I was terminated from the job that I performed well for 17 years. No reason needed for at will employment. There was a comment that I now have all the time for my husband.

After I was terminated, my work was taken over by Matt Morrison and Tyler Orff. Tyler Orff was a temp employee hired for projects. He is a white male in his 20's.

2. **I was discriminated due to association with a disabled person based on assumption of fear that I was unable to put all I could into my job. The discriminations against my race and age played major roles in these as well. This happened in three forms below in 04/2016 – 04/2017**

a) My work load continuously being added that I was working most of what used to be two full time jobs, and still being pushed and harassed for more. I was demanded must "work on all products and projects" for a 6 member team or I could not remain employment.

1) In December 2016, I was overwhelmed by working on my regular job, and all 6 team projects, as well as support Asian counterpart team projects. I asked the manager to distribute the 6 team projects to all team members in the similar manner as all other teams where every "key users" took up one or two projects. The manager refused and demanded that I work on all projects.

2) In January 2017, my work partner John DiCarlo was retiring and I asked Matt Morrison, who was supposed to be Mr. DiCarlo's replacement, to take over one of his responsibilities (sending out customer SDSs). Mr. Morrison complained to the manager and she demanded that I took that over. When Mr. DiCarlo's other responsibilities were falling down after his retirement, I did not dare to ask and had to take them all up.

3) In January 2017, the manager requested me to take up the work of "regulatory service" while someone was hired for that job. Since I was added more work, I asked 2 other team key users to take over one of the 6 projects but was requested by the manager to keep working on this project. Therefore, I was demanded the work load that essentially used to be two full time jobs.

4) On March 2, 2017, I received a German colleague's supporting request for a list of project work. Since I had been working days and evenings consecutively, I asked the manager for helping delegation. Together with the request, I explained reason for delegation with a snapshot of my work E-mail communication throughout days and evenings in three days. The manager did not provide any assistance and I worked the weekend to finish.

5) In February 2017, I was contributing to the best I could -- having my regular work, plus all of team projects, covering regulatory service work, and the portion of John DiCarlo's work which were falling down after his retirement. I could not believe that the manager would added to my

4

already done positive 2016 performance review citing not "working on all products and projects" and would not "remain a member of the team" which did occur April 3, 2017.

I was one member of a 6 member team. No one else in the team worked on more than one product line, more than one project. Only I was demanded to work on all products and all projects, and was terminated for that. It was a discrimination due to I was the only Asian in the team, and associated with a disabled husband.

6) We were a team of 6 members. Only Stephanie Brockenbrough, who is Black, and me, an Asian, were required to write weekly work reports. White team members were not required to write weekly reports.

b) I experienced hostile discriminatory treatments from my management when I needed time off or needed evening hours to care for my sick husband.

1) In or about June 2016, my work partner John DiCarlo and I carpooled to Philadelphia office for a team meeting. After the meeting, both of us declined to go dinner because I had a sick husband at home and John had personal business at home as well. Afterwards, I was struck with harsh criticisms and negative comments for passing that social dinner. An identified area of improvement "Engaged and involved in department activities – team integration" was added to my objectives. My co-worker John DiCarlo did not stay for that dinner either, but did not get any problems. I was discriminated due to I have a disabled family member. Also, I am Asian and Mr. DiCarlo is white.

2) On Thursday March 23, 2017, I notified my manager that I needed to take Tuesday March 28 off. Next day Friday March 24 I needed to squeeze 3 day work into 2 days since John DiCarlo retired and nobody was covering for my off. At 10:59am, the manager sent a message "Hong, Please prioritize working on the templates" which was a major project. At 12:55pm, colleague Matt Morrison in Philadelphia office asked me to help his SDS work. I spend time checked his work, figured out the problems, and replied him with illustrations of the problems and the corrections to make at 2:05pm. 15 minutes later at 2:20pm, he sent back his corrected SDS for me to check for him again.

It was apparent that, for 15 minutes, he only followed what I told him without even look to check the results. At that time, I had already helped him once and really needed time to work on the manager requested priority and responsible urgencies for AZ product line needed for next three days so that I could take Tuesday off. Therefore, I asked Mr. Morrison to check the work himself, "and then I can help you next Wednesday. I will be out of office on Tuesday." I copied Josh Gurman in case he could help.

Mr. Morrison complained to the manager who, well aware that I needed to squeeze three day's work into two days and her required priority project, blamed that I could not help Mr. Morrison in a timely manner on the second time and asked Mr. Morrison to review his own work. I was demanded to "follow up with trainees (including Matthew Morrison) within 24 hours of them asking a question. Trainees should not be told to check their own work."

5

So I was requested to help others, to do my own work, to check my own work, to check other's work, and to prioritize for major project, while the trainee should not be told to check his own work. Which SDS author in this profession does not need to review own work? It was a typical discrimination example in my work environment.

3) In or about May 2016, our team were to participate in a multi-day training (GPLS). The training was to be conducted in Philadelphia office but I made the arrangement with the trainers to participate via on-line meetings from New Jersey office so that I could be home for my husband in evenings. On the Friday before the training week, my manager called and demanded that I go Philadelphia office in person for the training so that I was unable to care for my husband for a week.

4) Early December 2016, I notified my manager needed days off to take husband seeing an out of state expert doctor. Then, I received an invitation for a project meeting. I explained to the meeting organizer that I was going to be out of town and could not participate. Strangely, even though we have other team members participating, the meeting organizer notified that I needed to get my manager's permission to pass that meeting. For that permission, I had to explain the medical appointment was already a reschedule due to my work, and send her the hotel reservation which was non-refundable.

5) Because of 17 years of service, I was entitled 27 days of paid time off per year. Due to all the difficulties and resistances I met with whenever requesting time off, I had to cancel/postpone time off plans. I was only able to take 20 of the 27 days in 2016 with my husband being ill most of the time. The remaining 7 days were forfeited, whereas the manager and all other team members had no problem for their vacation offs.

c) When a young white new employee could not perform the job after his planned training by others, it was used as a performance issue for my terminated. His training was not even assigned to me but I helped

Matt Morrison was hired as a senior specialist in August 2016 to be the replacement of my work partner John DiCarlo (also senior specialist) at Mr. DiCarlo's retirement in January of 2017. Both Mr. Morrison and management communicated that he was trained by Mr. DiCarlo and I was not assigned the trainer role nor involved in meetings regarding his training.

Mr. John DiCarlo's initially estimated the training would take two weeks since Mr. Morrison was experienced senior level. Mr. Morrison was trained with John DiCarlo for 5 months. In January 2017, he could not perform Mr. DiCarlo's responsibilities. Since Mr. Morrison had difficulties, I then helped and talked with him for 4 full days (January 10 to January 13, 2017) covering all aspects of our work. A list of the training topics/knowledge covered was sent to the management. Neither Mr. Morrison nor the manager complained that I missed any information, topic, or knowledge.

There were many E-mail communications that I helped other team members including Matt Morrison. However, I was charged for refusing sharing information to colleagues who needed to do their work and terminated on April 3, 2017.

6

Case 3:18-cv-01432-BRM-TJB Document 1 Filed 02/08/18 Page 12 of 13 PageID: 12
Hong Zhuang III Statement of Claim: Facts

When a young white could not perform well beyond his planned training, he was not to blame, his assigned trainer (white) was not, but an older Asian who helped was to punish and terminate. I was the only Asian in the team and the manager & Mr. Morrison are both white, I was older (57) and they were both at least ten years younger. It was discrimination based on my race, age, and association with a disabled individual.

In the event on March 24, 2017 described above, it was apparent that Mr. Morrison did not do the essential requirement of checking the SDS that he created. However, instead of coaching Mr. Morrison for correct work attitude when he complained, the manager demanded me for should not ask him to check his own work. A typical discrimination that I experienced in my work environment. Which SDS author does not need to check own work but demand co-worker to check for him?

Mr. Morrison was supposed to take over my work partner John DiCarlo's work responsibilities at his retirement, but they were added to my workload.

I had been sending information, training notes, how to instructions to the whole team, more than all I received combined. If anyone (including Matt Morrison) asked me a question, I always helped. Mr. Morrison needed to do the work and come up with questions. He did not do the work, only wanted co-worker to work it out for him one time after another. If not, he was going to complain to the manager who was, as always, discriminatorily harassing me instead of correct Mr. Morrison's work attitude.

### 3. EMD management made false, defamatory statement against me and spread it.

In my manager prepared Performance Improvement Plan (PIP) on April 3, there was a statement that I "discussing non-work topics with other employees and managers of other group". "For example, discussing a previous HR investigation that has been closed for many years". I have no knowledge of any HR investigation ever existed. There was, indeed, some misunderstanding about my honesty in workplace that occurred in 2009. When I learnt about it in 2015, I talked with the witness and called a meeting with relevant employees and managers (of other group) for clarification. The issue was clarified and everyone expressed no concerns.

In order to cover the unlawful termination of me, EMD management purposely make up a rumor that there was a previous HR investigation closed on the matter, and spread it. EMD purposely damaged my reputation.

Three months after terminated from EMD, I went on a job in another company. In August 2017 there were "previous HR investigation" rumors in my new job workplace. I send a message to EMD HR Business Partner Kristi Dye asking an EMD statement as to whether there was a "previous HR investigation" which involved me in EMD so that I could "clarify the confusion out here". EMD refused to help me clarifying the rumor they created. I then send a request to EMD for accessing personal information so that I could verify to my new management which was also ignored. Eventually, I lost that job.

I need to work to support my family since husband is disabled and significant medical expense. It was very difficult to land another job because the reason for leaving previous job was being terminated. The only job I found has commute time from home up to 4 hours a day which is not practical when the husband is sick at home needing medical care at any time. Currently, I am taking the husband with me renting an apartment near my work. We are paying extra rent money, and my husband is away from the comfort of home, his primary care doctor, and his supporting system of friends and neighbors.

4. **EMD ignored and retaliated my compliant and lied about my FMLA statement**

On March 20, 2017, I send a message to my manager's management (Paul Newcomb and Karl Hensen) for help. I complained about having been the target of the unceasingly discriminatory hostile work environment including the fabricated allegations and the threatening of employment if I did not take up all work for the whole team added to my 2016 review. In that message, I also stated "I have learnt what Luciana wrote in my review might be unlawful according to US FMLA law".

On 3/22/2017, EMD HR business Partner Kristi Dye asked me to and I did "confirm that I have not applied for or requested a leave of absence under the Family and Medical Leave Act ("FMLA"), nor have I been denied taking time off for FMLA purposes". Kristi then informed me that I was not protected if I did not specifically apply FMLA. She advised "Should you need to apply in the future, you can go to the HR4You (website)".

After my termination, I discussed my experience with attorney Raymond Seigler who pointed out that my notification of husband's serious illness and compliant about violating FMLA by way of hostile treatment during the year after notification were protected activities under FMLA. Furthermore, in order to avoid the burden of potentially being without an employee in the future, EMD unlawfully terminated my employment. Mr. Seigler sent an attorney letter to EMD with those statements. In response, EMD denied, lied and falsified my communication with Ms. Kristi Dye.

**Reliefs Sought:**

    Repair my reputation: Clarify the true facts and prevent rumor spreading.
    Reinstatement of my employment: Equal treatment as other team members.
    Lost wage and benefits $40,000
    Extra rent and moving expenses $24,000
    Emotional stresses to me and my family $20,000
    17 years of severance $70,000

*Hong Zhuang*

2-8-2018